838 So.2d 999 (2003)
CEF ENTERPRISES, INC., Appellant,
v.
Terry BETTS, Appellee.
No. 2002-CA-00570-COA.
Court of Appeals of Mississippi.
January 14, 2003.
*1001 David R. Sparks, Tupelo, attorney for appellant.
Victor Israel Fleitas, Tupelo, attorney for appellee.
Before KING, P.J., and LEE and IRVING, JJ.
LEE, J., for the court.
¶ 1. CEF Enterprises, Inc. (CEF), parent company of Burger King Restaurants, appeals the judgment granted in favor of the Appellee, Terry Betts. The County Court of Lee County, after a bench trial, awarded Betts $1,249.83 in damages plus court costs. CEF appealed to the Circuit Court of Lee County where the judgment was affirmed. Aggrieved, CEF now appeals to this Court. Finding no error, we affirm.

FACTS
¶ 2. On July 27, 1998, Mr. Terry Betts purchased a biscuit and gravy breakfast from the drive-thru window of a Burger King Restaurant in Tupelo. Betts parked in the parking lot of the Burger King and began to eat his breakfast. Betts found a bug in his food, immediately got sick and vomited. He then entered the Burger King where he spoke to employees and informed them about the bug and asked to speak to a manager. According to Betts, the employees made no other response but to laugh and snicker at him. Aggravated at this, Betts told the employees he was going to his lawyer's office and took the adulterated food item with him.
¶ 3. After stopping at his lawyer's office, Betts went to the emergency room sometime later. There, he was treated for nausea and given suppositories. The hospital also found that Betts's blood pressure was high. Betts went home and later that evening had to be driven to the hospital by his wife for additional treatment for the nausea and vomiting. According to Betts, his nausea and vomiting continued for approximately two to three more weeks.
¶ 4. Betts filed a complaint with the County Court of Lee County on August, 27, 1998. This complaint alleged that CEF breached its implied warranty of merchantability by allowing its food product to become contaminated with a bug.
¶ 5. In November of 2000, Betts filed a motion to amend his original complaint. *1002 Betts sought to add strict liability, negligence per se and negligence as legal theories in addition to his original complaint of breach of implied warranty of merchantability. He also sought to increase the ad damnum amount from $49,000 to $74,999. CEF filed a motion opposing this amendment and the county court held a pretrial hearing on the matter in January 2001.
¶ 6. During this hearing, CEF claimed this motion was not actually a motion to amend but a motion to supplement the original complaint. Additionally, inasmuch as two years had passed since the case was filed, CEF claimed it would be too prejudicial to grant the motion. The trial judge granted Betts's motion on the ground that under M.R.C.P. 15, motions to amend are to be liberally allowed. He stated that since the trial date had not been set, it would not be too prejudicial to CEF to allow the amendment. In order to insure against any future prejudice against the defendant, any further discovery would be approved by the trial judge before it could proceed.
¶ 7. The trial took place in June of 2001 in the County Court of Lee County. Through his testimony, Betts claimed to have kept the contaminated biscuit in his freezer at home. Betts admitted to past blood pressure problems and told the court he had received no other medical or psychiatric care besides the two emergency room visits. Betts claimed no loss of wages as he had been unemployed for approximately eleven years. Also at trial, two Burger King employees testified they saw no bug in Betts's biscuit. The same two Burger King employees plus an additional employee said they kept the adulterated food and threw it away. All of them said they saw Betts leave with nothing in his hand.
¶ 8. In his opinion, the trial judge found for Betts, stating there was sufficient proof of negligence and breach of implied warranty of merchantability in that the employees knew or should have known a bug was in their food product. He also held the biscuit in question was the direct cause of Betts's illness. Stating the damages were not permanent in nature, not overly serious, or long term, the judge awarded Betts $1,249.83 plus costs of court.
¶ 9. CEF appealed this decision to the Circuit Court of Lee County, which affirmed the judgment of the county court. CEF now is seeking relief from this Court.

STANDARD OF REVIEW
¶ 10. The county court is the finder of fact, and we, like the circuit court, are bound by the judgment of the county court if supported by substantial evidence and not manifestly wrong. Patel v. Telerent Leasing Corp., 574 So.2d 3, 6 (Miss.1990). Such findings may not be disturbed on appeal provided there is substantial supporting evidence in the trial record. Dungan v. Dick Moore, Inc., 463 So.2d 1094, 1100 (Miss.1985).

ARGUMENT AND DISCUSSION OF LAW
¶ 11. CEF assigns the following issues on appeal: (1) the circuit court erroneously affirmed the judgment of the county court, said judgment not being supported by substantial evidence, (2) the lower court erred in allowing appellee to supplement/amend his complaint more than two years after the initial filing of the complaint, (3) the lower court erred in awarding damages to appellee, there being insufficient proof to support such award, (4) the lower court erred in failing to reconsider the entry of the judgment awarded to appellee or, in the alternative, to grant appellant a new trial, and (5) the lower court erred by applying the wrong legal standard in making its decision. Finding that issues one, *1003 three and four are redundant, we will combine them into one main issue addressing the sufficiency of the evidence and the appropriateness of the damages awarded by the lower court.

I. WHETHER THERE WAS SUFFICIENT EVIDENCE IN THE TRIAL RECORD TO SUPPORT THE JUDGMENT OF THE LOWER COURT.
¶ 12. In the order issued by the county court judge, he found that under the proof presented at trial, two theories of law were applicable: negligence and breach of implied warranty for merchantability. This Court finds adequate evidence existed to support the trial judge's findings with regard to both of these causes of action.
¶ 13. In order to prove negligence, Betts had to show that CEF owed him a duty, breached that duty, and proximately caused Betts's injury and damages. Foster v. Bass, 575 So.2d 967, 972 (Miss.1990).
¶ 14. The implied warranty of merchantability is found in Miss.Code. Ann. § 75-2-314 (Rev.2002). This section provides in pertinent part: (1) a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind, (2) in the case of fungible goods, they are of fair average quality within the description, and (3) are fit for the ordinary purposes for which such goods are used.
¶ 15. To recover for breach of an implied warranty, the plaintiff must establish: (1) the defendant was a merchant which sold goods of the kind involved in the transaction, (2) that the defect was present when the product left the defendant's control, and (3) the injuries to the plaintiff were caused proximately by the defective nature of the goods. See Vince v. Broome, 443 So.2d 23, 26 (Miss.1983); Crocker v. Sears, Roebuck & Co., 346 So.2d 921, 923-24 (Miss.1977).
¶ 16. CEF argues that Betts lacked sufficient evidence to meet the elements defined in both of these causes of action and the trial judge erred in finding it liable. The standard of review in determining the sufficiency of the evidence has been stated many times. The evidence is considered "in the light most favorable to the appellee, giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, then the Court is required to reverse and render." Munford Inc. v. Fleming, 597 So.2d 1282, 1284 (Miss.1992) (citing Litton Systems, Inc. v. Enochs, 449 So.2d 1213, 1214 (Miss.1984)).
¶ 17. With this standard in mind, our focus turns to whether there was substantial evidence in the record for a judge to find that CEF was negligent and breached the implied warranty of merchantability with regard to the food product in question.
¶ 18. CEF argues there is not a "scintilla of evidence" to support Betts's claim. CEF points to several discrepancies in the record regarding the testimony of Betts and the Burger King employees as its basis for this argument. CEF argues that since the Burger King employees saw no bug in the biscuit and stated they threw it away, Betts's testimony is not credible. They assert the biscuit Betts presented at trial was not the one he purchased on the day in question, but one he purchased at a later date and then placed the insect inside of it. Additionally, they claim that since there is no medical testimony which conclusively links Betts's illness to the biscuit *1004 in question, this cannot be the proximate cause of his illness.
¶ 19. In circumstances where testimony is conflicting, the trial judge sitting as trier of fact, is in the best position to weigh the testimony and decide which is more credible. Carter v. Carter, 735 So.2d 1109 (¶ 19) (Miss.Ct.App.1999). In this instance, the trial judge made specific findings regarding the conflicting testimony of the parties involved. The judge stated that "there was a bug in Plaintiff's food. The Court is further convinced this was not a fabricated story by Plaintiff, but that his version was more believable than that testimony opposed to his."
¶ 20. He goes on to state CEF's claim that it threw away the product was not logical, especially since Plaintiff stated that when he became ill he was going to see his lawyer. The judge explains that "logic would be that Defendant would have kept the alleged product as evidence to protect them in their defense from any lawsuit, knowing that Plaintiff was going to see his attorney."
¶ 21. The judge also points out that while there was no expert medical testimony presented by Betts, he is "convinced, as any layperson who sat on the jury" that eating food where a roach is found, would induce nausea and vomiting. This is further supported by the hospital records which indicate that Betts got sick from eating part of a roach at Burger King Restaurant.
¶ 22. Moreover, there is a long line of Mississippi cases supporting the trial judge's ruling. In cases where a defendant business sells to the public a food product, which is contaminated by an animal, insect or other foreign object, and an individual consumes that item and becomes ill after discovering the contamination, this alone is enough to establish liability on the part of the defendant. See Stevens v. Picayune Coca-Cola Bottling Co., 224 Miss. 871, 82 So.2d 453, 453 (1955) (customer became ill after drinking from a bottle containing a decomposing bug); Coca Cola Bottling Works of Columbus v. Petty, 190 Miss. 631, 631, 200 So. 128, 128 (1941) (customer became ill after drinking from a bottle containing "animal matter"); Blount v. Houston Coca Cola Bottling Co., 184 Miss. 69, 69, 185 So. 241, 241 (1939) (customer became ill after drinking from a bottle containing a decomposing mouse or bird); Kroger Grocery Co. v. Lewelling, 165 Miss. 71, 71, 145 So. 726, 726 (1933) (customer became ill after eating contaminated can of tomatoes); Curtiss Candy Co. v. Johnson, 163 Miss. 426, 426, 141 So. 762, 762 (1932) (customer became ill after eating a candy bar containing glass); Rainwater v. Hattiesburg Coca-Cola Bottling Co., 131 Miss. 315, 315, 95 So. 444, 444 (1923) (customer became ill after drinking from a bottle containing dead flies and other insects); Jackson Coca-Cola Bottling Co. v. Chapman, 106 Miss. 864, 864, 64 So. 791, 791 (1914) (customer became ill after drinking from bottle containing a decomposing mouse).
¶ 23. As to the issue of damages, the judge considered Betts's medical expenses which were $249.83. He stated that a jury would have to determine damages in accordance with the proof, and he must do the same. He reasoned that since the injury was not permanent, not long term or overly serious in nature, a reasonable and fair judgment would be $1,249.83, plus court costs, in favor of Betts.
¶ 24. We find no fault in the trial judge's reasoning. His findings of liability on the part of CEF, and the amount of damages awarded are supported by the evidence.

II. WHETHER THE LOWER COURT ERRED IN ALLOWING *1005 THE APPELLEE TO AMEND HIS COMPLAINT MORE THAN TWO YEARS AFTER THE INITIAL FILING OF THE COMPLAINT.
¶ 25. CEF alleges that the lower court erred by allowing Betts to amend his original complaint after the original filing to include additional theories of recovery and amend the ad damnum clause. The standard applied to the review of a decision to allow an amendment to the pleadings is abuse of discretion. Simmons v. Thompson Machinery of Miss., Inc., 631 So.2d 798, 800 (Miss.1994). Unless the reviewing court is convinced the trial court abused its discretion, it is without authority to reverse. Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).
¶ 26. This issue centers around M.R.C.P. 15(a) and 15(d). Rule 15(a) states in part "a party may amend his pleading only by leave of court or upon written consent of the adverse party; leave shall be freely given when justice so requires."
¶ 27. In the comment to this rule, it also states that it is irrelevant if the amendment changes the cause of action or the theory of the case. Further, the comment explains: "In practice, an amendment should be denied only if the amendment would cause actual prejudice to the opposite party." See 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, Civil § 1484 (2d ed.1990).
¶ 28. Rule 15(d) deals with supplemental pleadings. This rule states a pleading may be supplemented upon reasonable notice and upon just terms, "setting forth transactions, occurrences, or events which have happened since the date of the pleading sought to be supplemented."
¶ 29. In its brief, CEF assigns two errors with regard to Betts's amended complaint. First, CEF argues Betts's motion to amend is actually a motion to supplement the original complaint. CEF argues that although motions to amend are to be liberally allowed, the court should not liberally allow motions to supplement under the guise of a motion to amend.
¶ 30. We disagree with CEF's assertions. Like the trial court judge stated and as this Court holds, Rule 15(d) deals with the supplementation of additional, unforeseeable or latent injuries and not additional legal theories. Also, even if Betts's amendment actually was a supplement, the standard for allowance was met by Betts. A supplement may be allowed if there was reasonable notice and just terms. Betts's motion was made six months before trial. CEF had ample time to prepare for the additional legal theories. We find this argument is without merit.
¶ 31. Second, CEF claims, that even if this is an amendment, it is too prejudicial since the motion was filed two years after the original complaint. CEF relies on several cases to support its argument that the amended complaint should not be allowed. This Court finds that all of these cases are distinguishable from the case at bar.
¶ 32. The first case CEF cites to is Rhodes v. Amarillo Hosp. Dist., 654 F.2d 1148 (5th Cir.1981). In this case, an amendment was sought thirty months after the filing of the complaint and the court denied the amendment. Id. at 1153. However, the basis of the court's denial of the amended complaint was that the amendment was sought three weeks before trial and would ultimately prove futile. Id. at 1154. The facts of this case are contrary to the case at hand. When Betts filed his motion to amend, no trial date had *1006 been set. Since there was a six month period between the pretrial hearing and the actual trial, CEF had plenty of time to prepare for trial regarding the additional causes of action.
¶ 33. CEF also relies on William Iselin and Co. v. Delta Auction and Real Estate Co., 433 So.2d 911 (Miss.1983), to support its claim. Here again, the facts differ strongly from the present case. In Iselin, the court denied the requested amendment because it was submitted after the trial and the court had rendered its opinion. Id. at 912-13. In contrast, Betts submitted his motion well before trial and the judge only allowed further discovery if he approved it. There was no danger of unfair prejudice against CEF and these two cases are not comparable.
¶ 34. Finally, CEF relies on TXG Intrastate Pipeline Co. v. Grossnickle, 716 So.2d 991 (Miss.1997). This Court is surprised by CEF's dependance on this case because, in our interpretation, it benefits Betts. In Grossnickle, the court held that not allowing an amendment three weeks before trial constituted an abuse of discretion by the trial court. Grossnickle, 716 So.2d at 1011-12. We fail to see how this case supports CEF's claims.
¶ 35. Given that Betts filed the motion to amend some six months before the date of trial and the judge clearly considered any prejudice that might be levied against CEF by not allowing further discovery unless he approved it, we find the trial judge did not abuse his discretion by allowing the amended complaint.
¶ 36. Additionally, even if this Court agreed that the trial judge abused his discretion by allowing the amendment, we find it would be harmless error. The granting of the amendment to the original complaint had no bearing on the outcome of the case. In his order, the trial judge found CEF liable on two theories of law: negligence and breach of implied warranty of merchantability. One of these theories, breach of implied warranty of merchantability, was presented in Betts's original complaint. Since this theory and negligence require the same type of proof, no prejudice existed in the trial judge's decision allowing the amendment.

III. WHETHER THE LOWER COURT ERRED BY APPLYING THE WRONG LEGAL STANDARD IN MAKING ITS DECISION.
¶ 37. CEF argues the lower court erred by applying the legal standard of negligence and breach of warranty. CEF claims the adulterated food laws, Miss. Code Ann. §§ 75-29-1 through 75-29-31 (Rev.2000), are the applicable standard. This Court finds this argument to be misplaced. CEF, more specifically, cites to § 75-29-3 of the Code which defines adulterated foods. It claims that, if applied, the adulterated food in question would pass the statutory requirements. Under the statute, Betts would have to show that Burger King purposely introduced the bug into the food or prove the substance would ordinarily render the food injurious to health. While true the evidence in the record would probably not pass this test, this Court finds this statute is not applicable to the present case.
¶ 38. First, these statutes deal more with sanctions available to the State Board of Health, rather than specific causes of action available to individuals. Miss.Code Ann. § 75-29-1 (Rev.2000). Second, it is clear from case law interpreting § 75-29-3, the definition of adulterated food is only applicable to meat and poultry. King v. Mississippi Power & Light Co., 244 Miss. 486, 496, 142 So.2d 222, 226 (1962). Finally, nowhere in this statute does it state that a trial judge must apply this legal *1007 standard over any other that may be applicable.
¶ 39. In the present instance, both sides were allowed to present a post trial brief discussing the applicability of the adulterated food statutes. The trial judge was able to weigh this matter and determined it did not apply. This Court finds no error in his decision and agrees the appropriate legal standards were negligence and breach of warranty of merchantability.
¶ 40. As stated previously, our scope of review is limited and we must defer to the decision of the trial judge if it is supported by substantial evidence. In a bench trial, the judge sits as the finder of fact and he is in the best position to weigh the evidence and determine credibility. Even if this Court would have come to a different conclusion, our well established standard of review does not allow us to disturb the findings of the trial judge if reasonable minds could differ. With this in mind, we cannot say the county court judge was manifestly wrong in his decision and find substantial evidence existed to support his ruling.
¶ 41. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, IRVING AND MYERS, JJ., CONCUR. CHANDLER AND GRIFFIS, JJ., NOT PARTICIPATING.