LEE, P.J.,
for the Court.
PROCEDURAL HISTORY AND FACTS
¶ 1. On July 27, 2001, Earnestine and Robert Thomas filed a complaint in the Tunica County Circuit Court against Hollywood Casino Corporation alleging that Earnestine ingested a toothpick that was embedded in prime rib served to her on July 30, 1999, at the Epic Buffet, a restaurant at the Hollywood Casino. On February 22, 2002, the Thomases amended their *1093 complaint to name HWCC-Tunica, Inc., the correct corporate entity, and Fineberg Packing Company, Inc., a supplier of HWCC-Tunica (the Casino).
¶ 2. The Casino subsequently filed a cross-claim against Fineberg Páeking seeking indemnity in the event of a verdict in favor of the Thomases against the Casino. Fineberg Packing then filed a cross-claim against the Casino seeking indemnity in the event of a verdict in favor of the Thomases. Fineberg Packing also filed a third party complaint against its supplier, Excel Corporation d/b/a Excel Food Distributors, seeking indemnity in the event of a verdict against Fineberg.
¶ 3. On December 2, 2003, the Casino filed a motion for summary judgment, arguing that there were no facts to support the Thomas’s contention that a toothpick was embedded in the prime rib served to Earnestine. The Thomases filed a response to the Casino’s motion on January 9, 2004, and the Casino filed a reply brief on January 26, 2004. On February 3, 2004, the trial court entered an order granting the Casino’s motion for summary judgment.
¶ 4. The Thomases subsequently filed a motion to reconsider. On May 4, 2004, a hearing on the motion to reconsider was held, after which the trial court ordered the previous order to remain in effect. Aggrieved, the Thomases appealed to this Court asserting that the trial court erred in granting the Casino’s motion for summary judgment.
STANDARD OF REVIEW
¶ 5. In reviewing a grant of summary judgment, this Court employs a de novo standard. If the pleadings, depositions, answers to interrogatories and admissions, together with any affidavits, show there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law and summary judgment should be entered for the movant. Boyles v. Schlumberger Technology Corp., 832 So.2d 503(¶ 5) (Miss.2002). According to M.R.C.P. 56(e), after a summary judgment motion is made, “an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.”
DISCUSSION
I. DID THE TRIAL COURT ERR IN GRANTING THE CASINO’S MOTION FOR SUMMARY JUDGMENT?
¶ 6. The Thomases’ primary issue on appeal is that the trial court erred in granting the Casino’s motion for summary judgment. In their brief, the Thomases break down their argument into three su-bissues: that there was sufficient evidence to support their contention that the toothpick originated in the prime rib; that they made out a prima facie case of negligence; and that they made out a prima facie case of breach of warranty. We will look at these claims separately.
. a. Sufficient Evidence
¶7. The Thomases mainly argue that there was sufficient evidence to support their contention that the toothpick was ingested by Earnestine while eating prime rib at the restaurant. According to Earnestine, after eating a small bite of the prime rib along with a bite of mashed potatoes and gravy, she felt a catch in her throat and needed to drink something afterwards. A few days later Earnestine went to the emergency room at Baptist Memorial Hospital complaining of abdominal pain. Dr. Bobby Flowers performed surgery upon Earnestine and removed a *1094 toothpick from her small intestine that was approximately one-and-a-half inches long.
¶ 8. During her deposition, Earnestine stated that the piece of prime rib she received was approximately one-half inch thick. While preparing to eat the prime rib, Earnestine testified that she cut the piece into smaller bites of one-half inch by one-half inch. Earnestine further testified that the meat was so tender she only needed to use her table knife to break it into smaller pieces. After placing the piece of prime rib in her mouth, along with a bit of mashed potatoes and gravy, Earnestine stated that she chewed the piece of meat prior to swallowing it. Earnestine never saw a toothpick in her food or on her plate at that time. Earnestine had no explanation as to how a one-and-a-half-inch toothpick could be concealed in a piece of prime rib approximately one-half inch by one-half inch. Earnestine urges this Court to take judicial notice of the fact that mashed potatoes and gravy act as a lubricant, thus allowing the prime rib to “go down” easier, making it harder for her to detect the presence of the toothpick. We decline to do so.
¶ 9. The Thomases produced no evidence that the toothpick extracted from Earnestine was ingested during her meal at the Casino restaurant. According to John Morrell and Co. v. Shultz, 208 So.2d 906, 907 (Miss.1968), “a verdict may not be based upon surmise or conjecture and that to prove a possibility only is insufficient to make a jury issue.”
b. Negligence
¶ 10. In order for Earnestine to recover for negligent acts by the Casino, she must prove that the Casino owed her a duty, that the Casino breached this duty, and this breach proximately caused her injury and damages. See CEF Enterprises, Inc. v. Betts, 838 So.2d 999, 1003(¶ 13) (Miss.Ct.App.2003). However, nowhere in Earnestine’s argument does she present any evidence as to the Casino’s duty to her or any breach of duty. Furthermore, nowhere in the record is there proof that the normal procedure for cooking and serving the prime rib was not followed. The Thomases do not dispute that the proper procedure was followed.
¶ 11. Furthermore, numerous affidavits were produced by employees of the Casino stating with particularity the normal procedure for receiving, storing, cooking, and serving the prime rib. From the record, we cannot find that the Thomases proved a prima facie case of negligence.
c. Breach of Implied Warranty
¶ 12. The Thomases claim that under Mississippi Code Annotated Section 75-2-314 (Rev.2002), it makes no difference as to how the toothpick might have come to be in the food Earnestine ate at the Casino. In order for Earnestine to recover for a breach of implied warranty, she must show the following: (1) the Casino was a merchant which sold goods of the kind involved in the transaction, (2) that the defect was present when the product left the Casino’s control, and (3) Earnestine’s injuries were proximately caused by the defective nature of the goods. See CEF Enterprises, 838 So.2d at 1003(¶ 15). However, as noted above, the Thomases produced no evidence that there was a defect in the prime rib when it was served to her. In fact, there is no evidence beyond mere speculation that the toothpick was in the prime rib. Accordingly, we cannot find that the Thomases made out a prima facie case of breach of warranty.
¶ 13. The Thomases have presented no proof to raise a genuine issue of material fact regarding any of their allegations; thus, we affirm the granting of summary judgment for the Casino.
*1095 ¶ 14. THE JUDGMENT OF THE TU-NICA COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J, MYERS, P.J., BRIDGES, IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ„ CONCUR.