# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 8, 2008

Charles R. Fulbruge III
Clerk

No. 07-30607
No. 07-31128

HEALTH NET, INC.,

Plaintiff-Appellant,

JAMES C. PERCY;
JONES, WALKER, WAECHTER, POITEVENT, CARRERE & DENEGRE,

Appellants,

v.

J. ROBERT WOOLEY,
Former Commissioner of Insurance for the State of Louisiana
in His Capacity as Liquidator of AmCare Health Plans of Louisiana, Inc.;
MARLON HARRISON,
as Receiver of AmCare Health Plans of Louisiana, Inc.;
KIM HOLLAND, Oklahoma Insurance Commissioner,
as the Receiver of AmCare Health Plans of Oklahoma, Inc.;
JEAN JOHNSON,
Special Deputy Receiver of AmCare Health Plans of Texas, Inc.,
and AmCare Management, Inc.;
JAMES J. DONELON, Louisiana Commissioner of Insurance,
as Successor-in-Interest to and in the Capacity
as Liquidator of AmCare Health Plans of Louisiana, Inc.,

Defendants-Appellees.

Appeals from the United States District Court
for the Middle District of Louisiana

Before REAVLEY, SMITH, and DENNIS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

After a trial in state court, Health Net, Inc. ("Health Net"), sued in federal court to block the enforcement of the state court's judgments. Relying on Louisiana state law, Health Net alleged that the judgments were null because of improper ex parte communication between the defendants and the state court judge. The defendants argued the federal court lacked jurisdiction and that the suit was frivolous. The district court agreed with the defendants, dismissed for want of jurisdiction, and sanctioned Health Net's counsel, Jones, Walker, Waechter, Poitevent, Carrere, & Denegre, and James Percy, a Jones Walker partner (collectively "Jones Walker").

Health Net appeals the dismissal. Jones Walker appeals the sanctions. We affirm the dismissal and vacate the sanctions.

I.

In June 2003, the Louisiana receiver of AmCare Health Care Plans of Louisiana ("AmCare-Louisiana"), a defendant-appellee in this suit, sued Health Net in state court to enforce a parental agreement between AmCare-Louisiana and Health Net. The receiver alleged, inter alia, that Health Net had breached its fiduciary duty, committed fraud, participated in a conspiracy, and deepened AmCare-Louisiana's insolvency. In October 2004, the respective receivers of AmCare Health Plans of Texas and AmCare Health Plans of Oklahoma intervened. Judge Clark held a trial, with the Texas claims tried to a jury and the

2

Oklahoma and Louisiana claims tried to the court.

The jury returned a verdict for the Texas receiver and awarded $52.4 million in compensatory and $65 million in exemplary damages. Clark reduced the awards to $36.6 million and $45.5 million, respectively. She awarded the Oklahoma receiver approximately $17.1 million in compensatory damages and the Louisiana receiver approximately $9.5 million in compensatory damages. The Oklahoma and Louisiana receivers unsuccessfully sought attorneys' fees.

While preparing its appeal, Health Net discovered billing statements from the Louisiana receiver that indicated the receiver had communicated ex parte with Clark before, during, and after trial. Health Net alleges that the Texas and Oklahoma receivers also communicated with her ex parte; alternatively, Health Net contends the receivers benefited from the Louisiana receiver's communications, because Clark approved an agreement among the three receivers to share equally in any recovery from Health Net.

Health Net asserts that the awards granted to the Oklahoma and Louisiana receivers were the result of the improper ex parte communication and that Clark dismissed the Louisiana and Oklahoma receivers' request for attorneys' fees sua sponte to moot the issue and thereby thwart Health Net's efforts to uncover the improper communications. Health Net contends Clark has issued other orders to prevent it from learning the content of certain ex parte communications. The receivers acknowledge that there have been ex parte communications and the transmittal of privileged work product to Clark, but only because this suit involves the receivership and liquidation of an insurer, and state laws and regulations authorize, even require, such communication.

Though Health Net appealed the verdicts and awards to the Louisiana Court of Appeal, it also sought an injunction in the federal district court declaring the verdicts a nullity under Louisiana Code of Civil Procedure article 2004, because the judgments were obtained by fraud or ill practices. Health Net filed

the same motion, on the same day, in Clark's court. The federal district court, adopting a report of the magistrate judge ("MJ"), dismissed the suit, holding that it did not have jurisdiction because Louisiana Code of Civil Procedure article 2006 dictates that the exclusive venue for an action brought under article 2004 is the trial court that rendered the judgment. The district court, through the MJ's report, also noted that the Anti-Injunction Act, 28 U.S.C. § 2283, might deprive it of jurisdiction.

The MJ recommended sanctioning Health Net and its counsel because it was so obvious that article 2006 precluded this suit. She concluded that the plaintiff had violated Federal Rule of Civil Procedure 11(b)(2)'s requirement that its "claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." The MJ recommended monetary sanctions in the amount of the receivers' attorneys' fees and court costs. The district court adopted the MJ's report but modified it so that only Jones Walker was sanctioned. The court referred the matter to the MJ to determine the receivers' attorneys' fees.

The MJ reviewed evidence of the receivers' attorneys' fees, adjusted the reasonable hourly fee downward for all three receivers, and added a ten-percent increase to the lodestar under Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), because of the undesirability of defending against this action and the distraction from the other litigation in this case. The court adopted the MJ's report and awarded the Texas receiver $16,360 and the Oklahoma and Louisiana receivers together $50,737.50.

## II.

We review de novo a dismissal for want of subject matter jurisdiction. Le-Clerc v. Webb, 419 F.3d 405, 413 (5th Cir. 2005). Health Net claims the district

court erred, because it has jurisdiction over this suit under 28 U.S.C. §§ 1331 and 1332. The district court, though briefly mentioning the federal question, presumed diversity of citizenship and concluded that Louisiana Code of Civil Procedure article 2006 deprived it of jurisdiction.

## A.

It is not contested that complete diversity exists among Health Net and the defendants. Health Net attempted to invoke diversity jurisdiction to exercise its state-law cause of action to annul a judgment obtained by fraud or ill practices. The district court held that article 2006 deprived it of jurisdiction by mandating an exclusive venue, the trial court that rendered the judgment, for relative nullity actions[1] brought under article 2004. The court supported its conclusion in part by drawing a negative inference from Moviefone, Inc. v. Target Ad, Inc., 1999 WL 319209 (E.D. La. May 19, 1999) (unpublished). There, in a one-page order, the court concluded it had jurisdiction because the allegation was

---

[1] Although article 2006 does not draw a distinction between "relative" and "absolute" nullity, Louisiana jurisprudence has established an exception to article 2006 for absolutely null judgments, see Knight v. Sears, Roebuck & Co., 566 So. 2d 135, 137 (La. App. 1st Cir.), cert. denied, 571 So. 2d 628 (La. 1990). A judgment is an absolute nullity when there exists a vice of form as provided exclusively in Louisiana Code of Civil Procedure article 2002. Hebert v. Hebert, 700 So. 2d 958, 959 (La. App. 1st Cir. 1997). Article 2002 provides that a final judgment shall be annulled if it is rendered (1) against an incompetent person not represented as required by law; (2) against a defendant who has not been served with process as required by law and who has not waived objection to jurisdiction, or against whom a valid judgment by default has not been taken; or (3) by a court which does not have jurisdiction over the subject matter of the suit. LA. CODE CIV. P. art. 2002.

A person with an interest may show an absolute nullity in a judgment in collateral proceedings at any time and before any court, because absolutely null judgments are not subject to the venue and delay requirements provided in article 2006. Knight, 566 So. 2d at 137. A judgment obtained by fraud or ill practices is a relatively null judgment and must be brought in a direct action, not a collateral attack. Id. A direct action requires the party seeking the annulment to file a petition, and the adverse party must be cited to appear, as in ordinary suits. Id. In contrast, a collateral attack is an attempt to impeach the decree in a proceeding not instituted for the express purpose of annulling it, that is, in another proceeding on a separate cause of action. Id.

that the state court proceeding was an absolute nullity, thereby exempting the action from the article 2006 venue requirement. Id. The Moviefone court did not address federal jurisdiction over relative nullity actions brought under article 2004 and shed no light on the instant question.

The court also relied on Dulien Steel Products, Inc. v. Connell, 252 F.2d 556, 559 (5th Cir. 1958), in which, in addressing the statutory forerunners of articles 2004 and 2006, we held that the district court lacked subject matter jurisdiction. At the time, Louisiana law did not permit a party to seek an annulment from the trial court if the judgment had been affirmed by the Louisiana Supreme Court, as the judgment in Dulien had been. Id. at 558-59. Because the plaintiff could not seek an annulment under state law, Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938), forbade the district court from offering such an opportunity in federal court. Dulien, 252 F.2d at 558-59.

Louisiana law has changed since then. Article 2006 pellucidly offers the opportunity to annul a judgment in the trial court "even though the judgment sought to be annulled may have been affirmed on appeal, or even rendered by the appellate court." LA. CODE CIV. P. art. 2006. Applying the Dulien rationale, we would reach a conclusion opposite to that of the district court. Because annulment is available in state court, Erie suggests the same opportunity is available in federal courts exercising their diversity jurisdiction. Whether Erie actually makes available, in federal court, the opportunity to annul a judgment for "ill practices" depends, however, on whether article 2006 is a matter of substance or procedure, an issue the district court did not address and need not have addressed, because the Anti-Injunction Act controls.

The district court's reliance on Moviefone and Dulien was misplaced, and its conclusion that it did not have subject matter jurisdiction was erroneous. In a footnote, however, the court held that the Anti-Injunction Act also justified dismissal by depriving the court of jurisdiction to enjoin a state court proceeding.

Though the district court is incorrect that the Anti-Injunction Act deprives it of jurisdiction,[2] the act is the proper ground for dismissing Health Net's state law claims under Federal Rule of Civil Procedure 12(b)(6).

"The Anti-Injunction Act generally prohibits federal courts from interfering with proceedings in state court." Vines v. Univ. of La., 398 F.3d 700, 704 (5th Cir. 2005) (citing § 2283). The statute states, "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." § 2283. The statute is strictly construed, and only the three exceptions contained in the text are recognized. See Atl. Coast Line R.R. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 286-87 (1970); Vines, 398 F.3d at 704.

Health Net seeks to have a federal court enjoin the enforcement of the judgments rendered by the state trial court by declaring them a nullity, even though proceedings are currently pending in the Louisiana Court of Appeal. The federal district court is barred from issuing such an injunction unless it fits within one of the three exceptions.[3]

Health Net does not invoke any of the exceptions but instead cites a myriad of cases from the late nineteenth and early twentieth centuries and tries to find space for their continued validity in the wake of Atlantic Coast Line. Health Net's reliance on the old, long-superseded cases is unavailing.

In Atlantic Coast Line, the Court rejected the argument that "a federal

---

[2] "It must be remembered that the anti-injunction act limits federal remedies without ousting federal subject-matter jurisdiction." 18B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4469 at 82 n.19 (2d ed. 2002).

[3] See also id. at 81-82 (citing § 2283) ("More complex problems are presented by efforts to secure relief on grounds that arguably would be available in the state court. The more persuasive argument, and the weight of authority, are that the anti-injunction act prohibits a federal court from enjoining enforcement of a state court judgment as 'proceedings in a State court' even on grounds that are available in the state court.").

court may enjoin state court proceedings even if that action cannot be justified by any of the three exceptions." 398 U.S. at 286-87. The Court held, instead, that the Anti-Injunction Act "is an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically de-fined exceptions." Id. at 286. "Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately this Court." Id. at 287. Though the district court had jurisdiction over Health Net's state-law claim under § 1332, article 2004 does not fall within the Anti-Injunc-tion Act's three exceptions, so the act mandates the dismissal of Health Net's state law claim under rule 12(b)(6).

## B.

Health Net avers in its complaint that the ex parte communication be-tween the court and state-appointed receivers deprived it of its Fourteenth Amendment due process right to a fair trial. Although the complaint does not cite § 1983, the allegation of a violation of the Fourteenth Amendment is suffi-cient to raise a federal question. The district court has subject-matter juris-diction over Health Net's § 1983 claim under § 1331, and the Anti-Injunction Act does not mandate its dismissal.[4]

The defendants contend that even if the court had federal question juris-diction over Health Net's claim, the doctrines of Younger and Burford abstention require the court to decline to exercise it. Although Younger abstention origin-ally applied only to criminal prosecutions, see Younger v. Harris, 401 U.S. 37 (1971), following Pennzoil Co. v. Texaco Inc., 481 U.S. 1, 10-11 (1987), it also ap-plies "when certain civil proceedings are pending, if the State's interests in the

---

[4] See Mitchum v. Foster, 407 U.S. 225, 242-43 (1972) (holding that § 1983 falls within the "expressly authorized" exception of § 2283).

proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government."  In Pennzoil, Texaco filed a § 1983 suit claiming Texas's post-judgment proceedings violated its constitutional rights.  Texaco argued that Younger abstention did not apply because the district court's jurisdiction did not implicate an important state interest.  The Court disagreed, holding that "[s]tates have important interests in administering certain aspects of their judicial systems," including "enforcing the orders and judgments of their courts."  Id. at 12-13.

Health Net, like Texaco, has filed a § 1983 claim implicating Louisiana's post-judgment proceedings, namely, the appellate process and the trial court's authority to annul a judgment obtained through fraud or ill practices.  Additionally, to the extent that the ex parte communications were permitted under state insurance receiver laws and regulations,[5] Health Net has averred that Louisiana's insurance receivership statutes violate due process.  Thus, Health Net's claims implicate important state interests similar to those in Pennzoil, suggesting that the district court ought to abstain.

Younger abstention also allows federal courts to avoid interpreting state laws that would result in the "unwarranted determination of federal constitu-

---

[5] Louisiana's receivership and liquidation statutes grant the insurance commissioner and/or a receiver broad powers.  Only the approval of the court is necessary to exercise many of those powers, creating situations in which the commission or receiver would seek the court's approval ex parte.  See, e.g., LA. REV. STAT. ANN. § 22:737 (granting the insurance commissioner, upon approval of the court, broad authority to, inter alia, "sell or otherwise dispose of the real and personal property, or any part thereof, and sell or compromise all doubtful or uncollectible debts or claims . . . ."); LA. REV. STAT. ANN. § 22:740 (granting the commissioner authority, with the court's approval, to borrow money to facilitate the "rehabilitation, liquidation, conservation, or dissolution" of the insurer; additionally, the commissioner is authorized, subject to the approval of the court, "to take any and all other action necessary and proper to consummate any such loans and to provide for the repayment thereof"); LA. REV. STAT. ANN. § 22:750 (authorizing the commissioner to make a report to the court setting forth the value of the assets of the insurer, the insurer's probable liabilities, and probable assessments necessary to pay all claims and expenses).  We leave it to the Louisiana courts to decide whether the alleged ex parte communication was appropriate or whether it may have affected Health Net's due process rights.

tional questions." Id. at 11. This is important, because the federal court's interpretation of state law "'is not binding on state courts and may be discredited at any timeSSthus essentially rendering the federal-court decision advisory and the litigation underlying it meaningless.'" Id. (quoting Moore v. Sims, 442 U.S. 415, 428 (1979)). This second rationale is especially important where the state provides a forum for the claim and might be able to resolve the issue on state law grounds, thereby avoiding the federal constitutional issues. See id. at 11-12. Applying this principle, the Court concluded in Pennzoil that Texas ought to have the opportunity to resolve any federal questions implicated by its post-judgment proceedings; thus, "so long as those challenges relate to pending state proceedings, proper respect for the ability of state courts to resolve federal questions presented in state-court litigation mandates that the federal court stay its hand." Id. at 14.

Similarly, Health Net's claim implicates the constitutionality of Louisiana's insurance receivership regulations. Louisiana offers a forum for Health Net's challenge and ought to have the opportunity to interpret its liquidation and receivership laws to determine whether they infringe on the right to a fair trial by necessitating ex parte communication. Louisiana should have the chance to interpret those requirements so as to avoid the constitutional question. For these reasons, the doctrine of Younger abstention directs the federal district court to abstain from exercising its federal question jurisdiction and allow Health Net to pursue its claim in the state courts.

Burford abstention,[6] on the other hand, is appropriate in two circumstances: first, when a case involves "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the particular case at bar," and second, when "the exercise of federal jurisdic-

---

[6] Burford v. Sun Oil Co., 319 U.S. 315 (1943).

tion over the question in the case would disrupt state efforts to establish a coherent policy with respect to a matter of substantial public concern." Barnhardt Marine Ins., Inc. v. New England Int'l Surety of Am., Inc., 961 F.2d 529, 531 (5th Cir. 1992) (internal citations omitted). This doctrine has typically been applied where a suit for money damages is filed against an insurance company in receivership, on the ground that states have primary responsibility for regulating the insurance industry and have comprehensive receivership and liquidation regulations.[7]

In Munich American Reinsurance Co. v. Crawford, 141 F.3d 585, 589-90 & n.2, (5th Cir. 1998), we recognized that for Burford abstention to apply, even in these typical cases, Quackenbush v. Allstate Insurance Co., 517 U.S. 706, 716-18 (1996), requires that the court have discretion to grant or deny relief. Thus, in Crawford, 141 F.3d at 590, we held that the court erred in exercising Burford abstention because it did not have discretion under the Federal Arbitration Act ("FAA") to deny the appellants their right to an order compelling arbitration. Nonetheless, we concluded that the Oklahoma Uniform Insurers Liquidation Act reverse pre-empted the FAA under the McCarran-Ferguson Act, because the Oklahoma laws were enacted to regulate the business of insurance, and the FAA impaired those laws. Id. at 590, 594-95.

Quackenbush does not preclude Burford abstention in this case, because it is left to the sound discretion of the trial court whether to annul a judgment for ill practices. See State v. Batchelor, 597 So. 2d 1132, 1135 (La. App. 1st Cir.), cert. denied, 604 So. 2d 964 (La. 1992). And although the instant matter is not the typical insurance case in which we apply Burford abstentionSSbecause

---

[7] See Barnhardt, 961 F.2d at 531; Martin Ins. Agency, Inc. v. Prudential Reins. Co., 910 F.2d 249, 254-55 (5th Cir. 1990) (listing examples of the typical case); Brown v. Link Belt Div. of FMC Corp., 666 F.2d 110, 112, 115 (5th Cir. 1982); Anshutz v. J. Ray McDermott Co., 642 F.2d 94, 95 (5th Cir. Unit A Mar. 1981) (per curiam).

Health Net is not seeking a money judgment against the receiversSSthis case does involve Louisiana's comprehensive receivership and liquidation scheme, and we have previously held that Burford abstention is appropriate where that scheme is at issue. See Barnhardt Marine, 961 F.2d at 531.

The rehabilitation or liquidation of insolvent insurers is a matter of public concern, and Louisiana has created a coherent policy to address this situation. This policy grants the insurance commissioner and overseeing court broad powers that could entail ex parte communication between the two. The involvement of the federal courts in this process would needlessly disrupt Louisiana's treatment of insolvent insurers, especially where there is a state forum available to hear Health Net's claim.

Though Younger and Burford abstention do not normally both apply, they do in this case: Younger abstention, because the federal courts should not interfere with the important interest Louisiana has in effecting its system of reviewing judgments, on appeal and through nullity actions, as in Pennzoil; and Burford abstention, because the receivership of an insurer is an area of law left for the states to establish a coherent policy. The district court should have recognized it had jurisdiction but then should have abstained from exercising that jurisdiction.

III.

The district court imposed rule 11 sanctions on Jones Walker for filing its nullity suit in federal court "when the relevant statutory law and jurisprudence clearly reflects that the action should have been filed in the state trial court." We review rule 11 sanctions for abuse of discretion and factual findings for clear error. Whitehead v. Food Max, Inc., 332 F.3d 796, 802 (5th Cir. 2003) (en banc) (internal citations omitted).

Rule 11 permits sanctions against a party that signs a pleading that is not

warranted by existing law or a good faith argument for its extension, modification, or reversal or the creation of new law. FED. R. CIV. P. 11(b)(2), (c). Rule 11 also permits sanctions where the factual allegations are unsupported or are not likely to be supported after a reasonable opportunity for further discovery. Id. The signing attorney has a duty of reasonable inquiry, but his signature is not a guarantee of the correctness of the legal theories argued, City of El Paso, Tex. v. City of Socorro, Tex., 917 F.2d 7, 8 (5th Cir. 1990), nor is it a guarantee of all alleged facts, especially if the matter is not easily discovered by extrinsic evidence, see Smith v. Our Lady of the Lake Hosp., Inc., 960 F.2d 439, 446 (5th Cir. 1992).

The sufficiency of Jones Walker's factual inquiry is not at issue; rather, the court found its legal inquiry deficient and sanctioned it because it "ignore[d] a mandatory venue provision under state law that has been applied consistently in Louisiana and Fifth Circuit jurisprudence." We disagree with the precedent on which the district court relied, and we conclude that although that court had jurisdiction, but, as we have explained, it ought to have abstained from exercising that jurisdiction.

We cannot affirm rule 11 sanctions for deficient legal inquiry and reasoning where the district court was incorrect. Jones Walker made colorable arguments regarding Burford abstention; it was not frivolous to suggest that Health Net's defensive action could be distinguished from the typical suit in which Burford abstention applies, where there is a claim against the receiver for assets. Jones Walker's argument to the district court, that Younger abstention did not apply because Health Net had not raised a constitutional claim, contradicts its assertion to this court that it did raise a § 1983 claim. Nonetheless, Jones Walker argued persuasively that Younger abstention cannot apply in the absence of a constitutional challenge, citing, among others, precedent from a sister circuit, see Zahl v. Harper, 282 F.3d 204, 209-10 (3d Cir. 2002).

With respect to the Anti-Injunction Act, Jones Walker asserted that the act only "limits the ability of federal courts to grant equitable relief based on federal law." It cites no authority. Still, a leading treatise acknowledges that it is a "[m]ore complex problem" where, as here, relief that is available in state court is sought from a federal court, and that it is not conclusive that the Anti-Injunction Act applies, although the "more persuasive argument, and the weight of the authority," is that it does apply. 18B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, supra, §4469. Jones Walker's argument is not sanctionable.

In the end, the district court sanctioned Jones Walker for not coming to the same erroneous conclusion that the court reached. It is true that Jones Walker's support for not applying article 2006§§one unpublished district court opinion§§was flimsy, but the district court's support for applying article 2006 was also unpersuasive. The other arguments presented by Jones Walker were not so bad as to justify sanctions. Because the court relied on its own erroneous view of the law to sanction Jones Walker, it abused its discretion.

In summary, we AFFIRM the dismissal of Health Net's state law claim, because the Anti-Injunction Act bars action by the federal courts with respect to that claim. We AFFIRM the dismissal of Health Net's federal claim, because it is proper to abstain in this case, and we VACATE the sanctions imposed.