# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 10, 2012

No. 11-60164

Lyle W. Cayce
Clerk

MONIQUE DOSS; NADIA HARRIS,

Plaintiffs – Appellants,

v.

NPC INTERNATIONAL, INCORPORATED; A & D MANAGEMENT
COMPANY, L.L.C.; SHANE BROWN,

Defendants – Appellees.

---------------------------------------------------------------------------------------------------------------

MONIQUE DOSS; NADIA HARRIS; SHAVONDA GIBBS; ROCHELLE
CHILDS; DARREN CHILDS; LADARIUS JOHNSON; TAMARA GREEN;
DARIUS WEST; ROGER HAWKINS; TAKEERA JOHNSON; LEVAN HARRIS;
JOSEPH DOSS; TYNEETA DOSS; BRENDA CHILDS; JUSTIN CHILDS, A
Minor by and through Brenda Childs as next friend and Natural Guardian,

Plaintiffs – Appellants,

v.

NPC INTERNATIONAL, INCORPORATED, doing business as Pizza Hut,

Defendant – Appellee.

---------------------------------------------------------------------------------------------------------------

KIMEYATTER POINTER, a Minor by and through Nancy Pointer as next of kin
and Natural Guardian,

Plaintiff – Appellant,

No. 11-60164

v.

NPC INTERNATIONAL, INCORPORATED, doing business as Pizza Hut,

Defendant – Appellee.

-------------------------------------------------------------------------------------------------------------

MONIQUE DOSS; NADIA HARRIS; SHAVONDA GIBBS; ROCHELLE CHILDS; DARREN CHILDS; LADARIUS JOHNSON; TAMARA GREEN; DARIUS WEST; ROGER HAWKINS; TAKEERA JOHNSON; LEVAN HARRIS; JOSEPH DOSS; TYNEETA DOSS; JUSTIN CHILDS, A Minor by and through Brenda Childs as next friend and Natural Guardian; NANCY POINTER; MISHAY HAMPTOM; TARMEISHA HAMPTON,

Plaintiffs – Appellants,

v.

NPC INTERNATIONAL, INCORPORATED, doing business as Pizza Hut,

Defendant – Appellee.

-------------------------------------------------------------------------------------------------------------

MONIQUE DOSS; NADIA HARRIS; SHAVONDA GIBBS; ROCHELLE CHILDS; DARREN CHILDS; LADARIUS JOHNSON; TAMARA GREEN; DARIUS WEST; ROGER HAWKINS; TAKEERA JOHNSON; LEVAN HARRIS; JOSEPH DOSS; TYNEETA DOSS; JUSTIN CHILDS, A Minor by and through Brenda Childs as next friend and Natural Guardian; NANCY POINTER; MISHAY HAMPTOM; TARMEISHA HAMPTON; KIMEYATTER POINTER, a Minor by and through Nancy Pointer as next of kin and Natural Guardian,

Plaintiffs – Appellants,

v.

NPC INTERNATIONAL, INCORPORATED, doing business as Pizza Hut,

Defendant – Appellee.

2

No. 11-60164

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 4:09-cv-00038-MPM-DAS

Before DEMOSS, CLEMENT, and ELROD, Circuit Judges.

PER CURIAM:[*]

In this consolidated action, the plaintiffs-appellants appeal the district court's summary judgment in favor of defendant-appellee NPC International, Inc.  The appellants' counsel also appeals the district court's affirmance of the magistrate judge's order sanctioning the appellants' counsel for unnecessarily filing multiple lawsuits on behalf of the same plaintiffs.  For the following reasons, we AFFIRM the district court's grant of summary judgment and REVERSE and REMAND the district court's affirmance of the magistrate judge's sanction order.

I.

On January 18, 2009, the plaintiffs-appellants, who were all members of the St. Paul Missionary Church in Itta Bena, Mississippi, participated in a "Daniel's Fast," in which they refrained from eating any food between 12:00 a.m. and (approximately) 3:00 p.m. on January 18, 2009.  After completing the Daniel's Fast, the appellants ate a mid-afternoon meal at defendant-appellee NPC International, Inc.'s (NPC) Pizza Hut restaurant in Greenwood, Mississippi.  This meal included servings of chicken wings and Meat Lovers pizza. Within thirty to sixty minutes after the commencement of the meal, some of the appellants allegedly began to experience one or more of the following symptoms: vomiting, nausea, cramps, diarrhea, asthma attack, and headache. The appellants, including some who were not actually experiencing symptoms

_____

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

but wanted to be "checked out," then sought treatment at the Greenwood Leflore Hospital (GLH).[1]    Within twenty-four hours, however, nearly all of the appellants who actually experienced symptoms had recovered and only one appellant, Monique Doss, later returned to GLH for additional treatment.

After the incident, the Mississippi State Department of Health (MSDH) began investigating whether Pizza Hut caused the various symptoms allegedly suffered by the appellants.  The MSDH tested stool samples, samples of leftover food "that were boxed for takeaway by church members and returned to the restaurant after the onset of illness, [and] chicken wings reported as undercooked by the church group and returned from the table."  The MSDH also noted a "non-critical" violation[2] involving raw chicken: "The temperature of raw chicken located adjacent to the deep fryer was measured at 93 [degrees Fahrenheit] which exeed[ed] the maximum cold holding temperature [of 41 degrees Fahrenheit]."  The raw chicken was held at that temperature for an unknown length of time.

At the conclusion of its investigation, the MSDH made the following noteworthy conclusions:

> Clinical laboratory results were not particularly useful, as specimens were collected after resolution of illness.  Eight stool specimens were collected from church group members who ate at the restaurant; five from individuals who were ill and three from non-ill persons.  Neither the *S. aureus* specimen typing nor exterotoxin testing were consistent from one specimen to the other, indicating unrelated organisms that were not from a single source. Results also indicated the presence of *B. cereus* in 2 non-ill persons. These bacteria can be found in up to 43% of well persons.

---

[1] The specific complaints and diagnoses of each appellant are set forth in the chart that is appended to this opinion.

[2] The MSDH noted other violations when they returned to the restaurant on January 19th and 20th.  The appellants have not established a nexus between these subsequent violations and their food poisoning allegations; therefore, we need not further discuss these subsequent violations in this opinion.

No. 11-60164

> Inspection of the restaurant was notable in that chicken wings [were] held at inappropriate temperatures for an unknown length of time. Food specimens that were evaluated in the PHL and FDA were negative for *S. aureus*, Staphlococcal enterotoxins and volatile or semi-volatile chemicals.
>
> The results of this investigation do not clearly explain the illnesses among the persons who ate at Pizza Hut on the afternoon of January 18, 2009. If there was a toxin in the food prepared that afternoon, one would expect a higher attack rate among those who ate at or from Pizza Hut but were not associated with the church group. The only illnesses outside the church group were among one household, and their illness was very mild. Environmental investigation revealed raw chicken kept at inappropriate temperatures, however the length of time the chicken was kept at this temperature is not known, and the bacteria that produce toxins that can sometimes cause gastrointestinal illness with a short incubation period (*S. aureus* and *B. cereus*) are not the typical bacteria found in raw chicken. Raw chicken can certainly contain pathogenic bacteria, usually bacteria with fairly long incubation periods (12-36 hours), inconsistent with the incubation period in this outbreak. The evidence regarding this incident does not provide an answer to the cause of the illness among the persons involved.

After the MSDH investigation, the appellants' counsel initiated a total of five negligence lawsuits against NPC based upon the Pizza Hut incident. First, appellants Monique Doss and Nadia Harris filed a negligence action (the "first action") against NPC, A & D Management Company, LLC, and Shane Brown in the Leflore County Circuit Court. *See Doss v. NPC Int'l, Inc.*, 2010 WL 3021533, at *1 (N.D. Miss. July 29, 2010). Arguing that A & D and Brown were improperly joined, NPC removed the first action to federal court. *Id.* The appellants responded by filing a motion to remand the case to state court. *Id.*

While the appellants' motion to remand was pending, the appellants' counsel filed a second negligence action against NPC in Leflore County Circuit Court on behalf of Doss, Harris, and the following new plaintiffs: Shavonda Gibbs, Rochelle Childs, Darren Childs, Ladarius Johnson, Tamara Green, Darius West, Roger Hawkins, Takeera Johnson, Levan Harris, Joseph Doss, Tyneeta

Doss, Brenda Childs, and Justin Childs. *Id.* The second action's complaint stated that each individual plaintiff sought no more than $75,000.00 in actual damages. *Id.* NPC nevertheless removed the second action to federal court based upon the complaint's request for punitive damages. *Id.*

Next, the appellants' counsel filed a third negligence action against NPC in the County Court of Leflore County on behalf of Kimeyatter Pointer. *Id.* The complaint sought a recovery below $75,000.00 and did not request punitive damages. *Id.* However, Pointer's subsequent deposition testimony revealed her belief that her claim was worth more than $75,000.00, prompting NPC to remove the third action to federal court. *Id.*

The appellants' counsel then filed a fourth negligence action against NPC in Leflore County primarily on behalf of individuals named in the second action, including, Monique Doss, Nadia Harris, Shavonda Gibbs, Rochelle Childs, Darren Childs, Ladarius Johnson, Tamara Green, Darius West, Roger Hawkins, Takeera Johnson, Levan Harris, Joseph Doss, Tyneeta Doss, and Justin Childs. *Id.* The fourth action also named three new plaintiffs: Nancy Pointer, Mishay Hampton, and Tarmeisha Hampton. *Id.* As in the third action, deposition testimony revealed that some plaintiffs valued their cases at over $75,000.00, which prompted NPC to remove the fourth action to federal court. *Id.*

Finally, appellants' counsel filed a fifth negligence action against NPC in Leflore County Circuit Court on behalf of all the previously named plaintiffs. *Id.* NPC removed this fifth action to federal court. *Id.*

After finding that federal jurisdiction existed in the five actions, the district court consolidated the cases into one proceeding. *Id.* The district court also dismissed A & D and Brown from the case due to their lack of involvement in the underlying incident. *Id.*

The magistrate judge then imposed *sua sponte* sanctions against the appellants' attorneys for filing the five lawsuits because the lawsuits "needlessly increase[d] the cost of litigation" in contravention of Federal Rule of Civil

Procedure 11(b)(1). *Id.* at *2. The magistrate ordered the appellants' counsel to pay NPC's attorney's fees and appellants' counsel appealed the sanctions order to the district court. *Id.* The district court affirmed the magistrate's imposition of sanctions but reversed the specific award of attorney's fees, finding that Rule 11 does not authorize a court to grant attorney's fees as part of a *sua sponte* sanction. *Id.* at *4-5.

Moreover, in response to the appellants' counsel's claim that the magistrate judge lacked authority to sanction them for state court filings, the district court stated, in the alternative, that "Mississippi state courts impose the same duties as those imposed by federal courts under Mississippi's substantially similar Rule 11." *Id.* at *4 (citing Miss. R. Civ. P. 11). The district court then explained that it had the authority to apply Mississippi's Rule 11 against the appellants' attorneys. *Id.*

On remand, the magistrate judge ordered the appellants' attorneys to pay monetary sanctions in the amount of $5,000.00 to the court by October 4, 2010. *Doss v. NPC Int'l, Inc.*, 2010 WL 3950578, at *2 (N.D. Miss. Oct. 7, 2010). Once again, the appellants' attorneys appealed the magistrate's decision to the district court. *Id.* The attorneys argued that "the court-ordered amount would be a financial hardship on them and their legal practice" and that "the amount could prevent further access to this court for the parties they represent[ed]." *Id.* The district court affirmed the magistrate's order to pay $5,000.00 in sanctions but reversed the ordered date of payment. *Id.* at *3. Instead of requiring payment by October 4, 2010, the district court ordered the appellants' counsel to "tender $5,000.00 on the fifth day following the date of entry of a final order terminating this litigation." *Id.*

Next, on February 24, 2011, the district court granted NPC's motion for summary judgment, finding that the appellants had failed to establish the breach of duty and causation elements of their negligence action. *Doss v. NPC*

*Int'l, Inc.*, 2011 WL 754891, at \*2-3 (N.D. Miss. Feb. 24, 2011). This appeal followed.

## II.

The appellants raise two issues on appeal. First, they contend that the district court erred in granting NPC's motion for summary judgment. Second, the appellants' counsel argues that the district court erred in affirming the magistrate's $5,000.00 sanction.

We review a summary judgment *de novo*, applying the same standard as the district court. *Trinity Universal Ins. Co. v. Emp'rs Mut. Cas. Co.*, 592 F.3d 687, 690 (5th Cir. 2010). "Summary judgment should be affirmed if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 378 (5th Cir. 2011) (citations and internal quotation marks omitted).

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). "Even if we do not agree with the reasons given by the district court to support summary judgment, we may affirm the district court's ruling on any grounds supported by the record." *Lifecare Hosps., Inc. v. Health Plus of La., Inc.*, 418 F.3d 436, 439 (5th Cir. 2005).

No. 11-60164

We review Rule 11 sanctions for abuse of discretion and factual findings for clear error. *Health Net, Inc. v. Wooley*, 534 F.3d 487, 497 (5th Cir. 2008). "A district court abuses its discretion if it imposes sanctions based on (1) an erroneous view of the law or (2) a clearly erroneous assessment of the evidence." *Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 566 (5th Cir. 2006).

1.    **The District Court did not Err in Granting NPC's Motion for Summary Judgment**

NPC offered as summary judgment evidence the MSDH report, which concluded that, after testing stool and food samples, "the evidence regarding [the Pizza Hut] incident does not provide an answer as to the cause of the illness among the persons involved." Second, NPC presented an affidavit of its expert, Dr. Ernest Williams, who, upon review of the appellants' medical records and the MSDH report, concluded that there were "several inconsistencies with what the plaintiffs have put forth in terms of there being a direct illness being brought about due to consuming contaminated food while at Pizza Hut." Dr. Williams' affidavit also stated that "one very likely theory [to explain the cause of the appellants' symptoms] would be that the plaintiffs had contracted an intestinal virus, referred to commonly as 'stomach flu' or 'intestinal flue.'" Third, the appellants' medical records, which are summarized in the attached appendix, showed that not one appellant was diagnosed with food poisoning on January 18, 2009, and many received diagnoses that were unrelated to food poisoning.[3]

---

[3] Likewise, many of the diagnoses that were potentially related to food poisoning were not reached through any testing of stool or vomitous sample—as no such testing occurred—but through conversations between the appellants and their treating physicians. For instance, Kimeyatter Pointer and Joseph Doss were both diagnosed with "exposure to undercooked food" after reporting that they began to vomit upon seeing what they considered to be undercooked chicken wings. The medical personnel at GLH did not test the chicken wings to determine whether they were, in fact, undercooked. Likewise, the physicians did not test Pointer and Doss for the toxins or bacteria that are typically associated with undercooked food. In this circumstance, such medical diagnoses—which rely strictly on information related to a physician by a patient—are accorded little weight in Mississippi. *See John Morrell & Co. v. Shultz*, 208 So. 2d. 906, 907 (Miss. 1968) (finding that the defendant's motion for a directed verdict should have been granted because the plaintiff's food poisoning case hinged upon the plaintiff's "testimony as to what she thought caused her illness and the doctor's opinion formed

In order to survive summary judgment, the appellants were required to respond to NPC's evidence with contrary evidence to establish a genuine issue of material fact. *See Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010) ("Once a party meets the initial burden of demonstrating that there exists no genuine issue of material fact for trial, the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial.") (citation omitted). The appellants failed to meet this burden.

The appellants provided evidence from their medical records indicating that at least some of them claimed to have fallen ill after eating chicken wings at Pizza Hut. They also showed that, on January 18, 2009, some chicken, which was discovered by MSDH, was kept for an unknown length of time at 93 degrees Fahrenheit in the Pizza Hut kitchen. Finally, the appellants presented the affidavit of a Pizza Hut employee who testified that Pizza Hut was having sewage issues on the date of the incident. This evidence fails to create a genuine issue of material fact regarding causation.

Most importantly, the appellants failed to present any scientific or medical evidence linking their alleged symptoms to the chicken.[4] To the contrary, the summary judgment evidence overwhelmingly indicated that such a link was lacking. The MSDH report, for example, explained that their tests did not reveal the presence of consistent types of bacteria in the appellants' stool samples and that such consistency would have been expected in a food poisoning case. Similarly, the MSDH also reported that the vast majority of non-church

---

from the history of the illness related to him").

[4] In Mississippi food poisoning cases, medical and/or scientific evidence is generally a pre-requisite to satisfying the element of causation. *See, e.g., John Morrell & Co.*, 208 So. 2d. at 907; *L.W. ex rel. Ware v. Tyson Foods, Inc.*, 2011 WL 3476574, at *3 (S.D. Miss. Aug. 9, 2011) (denying defendant's motion for summary judgment primarily because the plaintiff "was tested and found to have campylobacter bacteria"). *But see CEF Enters.,Inc. v. Betts*, 838 So. 2d 999, 1004 (Miss. Ct. App. 2003) (explaining that expert medical testimony is unnecessary when the negligence action is based upon the presence of a foreign object, such as a roach or decomposing bug, in the food consumed by the plaintiff) (citations omitted).

group patrons of Pizza Hut on January 18, 2009 did not get sick, which is inconsistent with typical food poisoning cases. Critically, the MSDH's report also concluded that it was unlikely the chicken wings caused the appellants' alleged symptoms because the "bacteria that produce toxins that can sometimes cause gastrointestinal illness with a short incubation period (*S. aureus* and *B. cereus*) are not the typical bacteria found in raw chicken."[5] The appellants' failure to rebut this evidence–which was largely corroborated by Dr. Williams–supports the district court's grant of summary judgment on causation.[6] *See Liberty Lobby*, 477 U.S. at 252 (a genuine issue does not exist where the evidence "is so one-sided that one party must prevail as a matter of law").

In this negligence case, the appellants were required to show that NPC owed them a duty, breached that duty, and proximately caused their injuries and damages. *Betts*, 838 So. 2d at 1003. NPC moved for summary judgment, relying on evidence that the meal at Pizza Hut did not cause the appellants' alleged symptoms. The appellants have failed to offer sufficient evidence in rebuttal. *See McNeal v. Bar S Food Co.*, 110 F.3d 794 (table), 1997 WL 119910, at *1 (5th Cir. 1997) (holding that summary judgment was appropriate because the record "taken as a whole [did] not suffice to reasonably support an affirmative factual finding–as opposed to a mere suspicion, speculation, or conjecture–either that the bologna was actually toxic or that what plaintiff

---

[5] The MSDH also explicitly noted that the above-temperature chicken that was "negative for *S. aureus*, Staphlococcal enterotoxins and volatile or semi-volatile chemicals."

[6] Based on appellants' failure to properly designate their experts, the district court struck all of their experts (and corresponding affidavits) except Dr. Paula Spence-Evans, who was one of the physicians that treated the appellants at GLH. However, as appellants concede, based on the same improper designation, the district court limited Dr. Spence-Evans' testimony to information provided in her medical reports. These medical reports do not give rise to a genuine issue of material fact regarding causation. Thus, given the district court's limitation of Dr. Spence-Evans' testimony, there is nothing in Dr. Spence-Evans' affidavit that would suffice to create a genuine issue of material fact.

suffered from was actually food poisoning"); *Miller v. Lykes Bros.-Ripley S.S. Co.*, 98 F.2d 185, 186 (5th Cir. 1938) (finding that appellant failed to satisfy its burden of proof regarding causation because "[t]he most that any of appellant's medical witnesses would say was that there was a possibility or strong liklihood that food poisoning could [have] cause[d] [appellant's sickness]"). Accordingly, we need not address the other three elements of the appellants' negligence claim, and we affirm the district court's grant of summary judgment in favor of NPC. *See Little*, 37 F.3d at 1075 (Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.") (quoting *Celotex*, 477 U.S. at 322).

## 2.     The District Court Abused its Discretion in Sanctioning Appellants' Counsel

The appellants' counsel argues that the magistrate judge and district court lacked the authority to sanction them for improperly filing repetitive lawsuits on behalf of the same plaintiffs in state court, even though the petitions were later removed to federal court.  We disagree.  The district court had the authority to impose sanctions in the case.  However, we reverse and remand because those sanctions should have been imposed in accordance with the law of the state where the pleading was initially filed before the case's removal to federal court.

The appellants cite our decision in *Positive Software* to support their contention that the federal courts lack the authority to sanction their pre-removal state court conduct.  *See Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 619 F.3d 458 (5th Cir. 2010).  In *Positive Software*, we held that the district court lacked the inherent authority to impose sanctions for conduct committed during a court-ordered arbitration proceeding.  *Id.* at 461. Here, the appellants' reliance on *Positive Software* is misplaced.  The Fifth Circuit has explicitly held that federal courts have the authority to issue

sanctions under state law when a party commits a sanctionable act in a state court action that is later removed to federal court. *See Tompkins v. Cyr*, 202 F.3d 770, 787 (5th Cir. 2000).

We nevertheless hold that the district court abused its discretion when it affirmed the magistrate judge's sanctions pursuant to Federal Rule 11. Our decision in *Tompkins* established that "the federal rules do not apply to filings in state court, even if the case is later removed to federal court." *Id.* Instead, state pleading rules apply to cases that are initially filed in state court and later removed to federal court. *Id.* Thus, the district court abused its discretion by applying an erroneous view of the law when it affirmed the magistrate judge's imposition of sanctions pursuant to Federal Rule 11.

Specifically, the magistrate judge imposed a $5,000.00 sanction under Federal Rule 11 because the appellants' counsel "needlessly increas[ed] the cost of litigation" by filing multiple lawsuits in state court. *Doss*, 2010 WL 3021533, at *2. The district court affirmed this penalty but reversed the date upon which the $5,000.00 payment would be due to the court. *Doss*, 2010 WL 3950578, at *3.

We reverse and remand the district court's affirmance because Mississippi Rule 11 does not contain the same breadth as Federal Rule 11. With regard to sanctions, Mississippi Rule 11 states, in pertinent part:

> If any party files a motion or pleading which, in the opinion of the court, is frivolous or is *filed for the purpose of harassment or delay*, the court may order such a party, or his attorney, or both, to pay to the opposing party or parties the reasonable expenses incurred by such other parties and by their attorneys, including reasonable attorneys' fees.

Miss. R. Civ. P. 11(b) (emphasis added). Unlike Federal Rule 11, Mississippi Rule 11 does not provide for sanctions based upon needlessly increasing the cost of litigation. Furthermore, Mississippi Rule 11 requires a determination that the offending pleading be "filed for the purpose of harassment or delay." Federal

Rule 11 is broader, proscribing pleadings from "being presented *for any improper purpose*, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1) (emphasis added). Thus, on remand, the court must determine whether the appellants' counsel's conduct was sanctionable under Mississippi Rule 11.[7]

## III.

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment and REVERSE and REMAND the district court's affirmance of the magistrate judge's sanction order.

---

[7] We also note that Mississippi Rule 11 does not explicitly authorize sanctions that are paid directly to the court, such as the $5,000.00 in this case. Instead, the focus of the rule is upon payment of the reasonable expenses of the opposing party.

No. 11-60164

**APPENDIX**

| Name | Final Diagnosis | Additional Notes |
|---|---|---|
| Monique Doss | "Enteritis–non food poisoning" | Doss complained of vomiting and diarrhea; Doss returned to GLH on 1/21/09 and was diagnosed with gastroenteritis |
| Mishay Hampton | "Enteritis–non food poisoning" | Hampton was two months pregnant and complained of vomiting |
| Nadia Harris | "Enteritis–non food poisoning" | Harris's chief complaint was vomiting after eating boneless wings |
| Tarmeisha Hampton | "Enteritis–non food poisoning" | Hampton complained that her head was spinning (the rest of her complaints are illegible) |
| Sharonda Gibbs | "poss[ible] toxin exposure" | n/a |
| Darron Childs | "poss[ible] toxin exposure" | Childs did not report feeling any symptoms but was sent to be "checked out" |
| Ladarius Johnson | "poss[ible] toxin exposure" | Johnson denied feeling pain but was sent to be "checked out" |
| LeVan Harris | "poss[ible] toxin exposure" | Harris denied feeling any pain and his symptoms were apparently resolved before arriving to GLH |

15

| | | |
|---|---|---|
| Darius West | "poss[ible] toxin exposure" | West complained of small amounts of nausea and vomiting but his symptoms were apparently resolved before arriving to GLH; West also denied feeling any pain at GLH |
| Roger Hawkins | "poss[ible] toxin exposure" | Hawkins reported feeling hot and experiencing back pain |
| Justin Childs | "exposure to undercooked food" | Childs experienced cramps |
| Joseph Doss | "exposed to undercooked food" | Doss reported that he "started vomiting after looking at some hot wings that were undercooked" |
| Rochelle Childs | "N/V? 2nd to undercooked food; possible collective hysteria; asthma attack"[8] | Childs complained that she was "trying to vomit" and that she threw up at Pizza Hut |
| Kimeyatter Pointer | "N/V? 2nd to undercooked food; possible mass hysteria" | Pointer reported vomiting after someone saw blood in the chicken wings |
| Tyneeta Doss | "N/V? 2nd to undercooked food; possible GERD" | Doss reported that she ate some undercooked wings at Pizza Hut |
| Nancy Pointer | No diagnosis because Pointer left the emergency room before receiving treatment | Pointer reported that her chief complaint was a cough and she denied feeling pain |

---

[8] The "N/V" apparently stands for "nausea and vomiting."

16

| | | |
|---|---|---|
| Tamara Green | "(1) UTI (2) pregnant" | Green reported 2-3 weeks of nausea; Green was unaware that she was pregnant; her pregnancy was discovered at GLH |
| Takerra Johnson | "hypoglycemia" (and other illegible diagnoses) | Johnson reported that her chief complaint was "headache" |